779 So.2d 639 (2001)
Lawrence McINTYRE, Sr., Appellant,
v.
SEMINOLE COUNTY SCHOOL BOARD, Appellee.
No. 5D00-516.
District Court of Appeal of Florida, Fifth District.
March 9, 2001.
*640 Lawrence McIntyre, Sr., Sanford, pro se.
Ned N. Julian, Jr., Sanford, for Appellee.
PETERSON, J.
Lawrence McIntyre, Sr., pro se, appeals his suspension and subsequent termination of employment by the Seminole County School Board (School Board). McIntyre also appeals the School Board's decision to deny his request for an administrative hearing based on untimeliness.
McIntyre began his employment with the School Board in 1978. In 1999, McIntyre signed a one-year contract which provided that he could only be suspended or discharged "for cause as provided by law." His position as an area transportation manager included supervising, training, and evaluating bus drivers, scheduling, and other managerial responsibilities. Although a commercial driver's license (CDL) was preferred, it was not required for this position.
On December 6, 1999, McIntyre received a letter from the superintendent of the School Board stating that McIntyre had tested positive for drugs in violation of the School Board's drug-free policy, that McIntyre was suspended with pay effective December 3, 1999 until December 14, 1999, that the superintendent would recommend suspension without pay at the December 14, 1999 meeting of the School Board, and that the superintendent would recommend McIntyre's termination at the *641 January 11, 2000 meeting to take effect January 12, 2000. The Board also advised McIntyre that he was entitled to a hearing under section 120.57, Florida Statutes, and that if a hearing was desired he must make a written demand within twenty-one (21) days of receipt of the letter. On December 13, 1999, the day before the School Board meeting, McIntyre delivered a letter asking that he not be suspended without pay, that he was trying to gather information that would show that he was not a "confirmed positive" on the date of the November 19, 1999 drug testing, and asking for a review of his twenty-two year employment record which would "speak for him." McIntyre also attached a copy of the results of a December 10, 1999 drug test which showed that he had no drugs in his system.
On December 15, 1999, McIntyre received written notice that the School Board suspended him without pay effective December 15, 1999. On January 11, 2000, McIntyre filed a request for an administrative hearing pursuant to section 120.57. On January 25, 2000, the School Board denied McIntyre's request based on untimeliness and entered an order terminating his employment effective December 14, 1999. The order reflects that the School Board mistakenly believed that McIntyre was required to hold a CDL.
On February 22, 2000, McIntyre filed his notice of appeal and raised a number of errors, only the following of which will be the basis of our reversal.

I. Review of Agency Action
"A party who is adversely affected by final agency action is entitled to judicial review." Fla. Stat. § 120.68(1) (1999). In reviewing an agency's decision, an appellate court cannot substitute its judgment for that of the agency on disputed issues of fact. See Kinlaw v. Unemployment Appeals Com'n, 417 So.2d 802 (Fla. 5th DCA 1982); see also Fla. Stat. § 120.68(7)(b). The appellate court is confined to determine whether there is competent and substantial evidence to support the agency's action following a hearing. See Davis Des Rocher Sand Corp. v. Weight Review Bd., 376 So.2d 402, 403 (Fla. 3d DCA 1979); see also Fla. Stat. § 120.68(7)(b). However, the reviewing court "shall remand a case to the agency for further proceedings ... or set aside agency action, as appropriate, when it finds that ... there has been no hearing prior to agency action and the reviewing court finds that the validity of the action depends upon disputed facts." Fla. Stat. § 120.68(7)(a) (emphasis added); see, e.g., Castillo v. Department of Admin., Div. of Retirement, 593 So.2d 1116, 1117 (Fla. 2d DCA 1992).
A teacher or contractual employee who can only be terminated for cause has a contractual property interest in his job. See Sublett v. District Sch. Bd. of Sumter County, 617 So.2d 374, 377 (Fla. 5th DCA 1993) (citing McCracken v. City of Chinook, 652 F.Supp. 1300 (D.Mont. 1987)). Moreover, under Florida law, a school board's decision to terminate an employee is one affecting the employee's substantial interests; therefore, the employee is entitled to a formal hearing under section 120.57(1) if material issues of fact are in dispute. See Sublett v. District Sch. Bd. of Sumter County, 617 So.2d 374, 377 (Fla. 5th DCA 1993) (citing French v. School Bd. of Polk County, 568 So.2d 497 (Fla. 2d DCA 1990); Taylor v. School Bd. of Seminole County, 538 So.2d 150 (Fla. 5th DCA 1989)); see also Weiss v. Department of Bus. and Prof. Reg., 677 So.2d 98, 99 (Fla. 5th DCA 1996). However, the person who is substantially affected must affirmatively request a formal hearing; otherwise, he has waived that right. See City of Punta Gorda v. Public Emp. Relations Com'n, 358 So.2d 81, 82-83 (Fla. 1st DCA 1978); see also Fla. Stat. § 120.57 (1999). For an agency to establish that a person has waived his right to an administrative hearing, the agency must demonstrate that the person has been advised of the action to be taken and the basis thereof, the right to an administrative hearing, *642 a clear point of entry into the administrative process, and a deadline by which a hearing must be requested. See City of St. Cloud v. Department of Envtl. Reg., 490 So.2d 1356, 1358 (Fla. 5th DCA 1986) (internal citations omitted).

A. Untimely Demand for Hearing
The School Board notified McIntyre in writing on December 6, 1999 of its intent to suspend him and seek termination of his employment for testing positive for drugs. The notice advised McIntyre of the right to an administrative hearing provided that he request it within twenty-one days. This procedure provided McIntyre with clear entry into the administrative process.
The School Board treated McIntyre's timely filed letter of December 13, 1999 as a failure to exercise a right to a hearing. We disagree. Section 120.569(2)(c), Florida Statutes (1999) provides:
Unless otherwise provided by law, a petition or request for hearing shall include those items required by the uniform rules adopted pursuant to s. 120.54(5)(b)4. Upon the receipt of a petition or request for hearing, the agency shall carefully review the petition to determine if it contains all of the required information. A petition shall be dismissed if it is not in substantial compliance with these requirements or it has been untimely filed. Dismissal of a petition shall, at least once, be without prejudice to petitioner's filing a timely amended petition curing the defect, unless it conclusively appears from the face of the petition that the defect cannot be cured. The agency shall promptly give written notice to all parties of the action taken on the petition, shall state with particularity its reasons if the petition is not granted, and shall state the deadline for filing an amended petition if applicable (emphasis added).
Thus, if a petition for a hearing is dismissed, the agency's order must provide specific findings, conclusions, and reasons for the dismissal and allow the affected party to amend his petition. See City of Winter Park v. Metropolitan Planning Org. for Orlando Urban Area, 765 So.2d 797, 798 (Fla. 1st DCA 2000). Furthermore, section 120.54(5)(b)4, Florida Statutes (1999), requires an agency to pass uniform rules of procedure for the filing of petitions for administrative hearings under either sections 120.569 or 120.57. Section 120.54(5)(b)4 provides that the petition must include:
a. The identification of the petitioner.
b. A statement of when and how the petitioner received notice of the agency's action or proposed action.
c. An explanation of how the petitioner's substantial interests are or will be affected by the action or proposed action.
d. A statement of all material facts disputed by the petitioner or a statement that there are no disputed facts.
e. A statement of the ultimate facts alleged, including a statement of the specific facts the petitioner contends warrant reversal or modification of the agency's proposed action.
f. A statement of the specific rules or statutes the petitioner contends require reversal or modification of the agency's proposed action.
g. A statement of the relief sought by the petitioner, stating precisely the action petitioner wishes the agency to take with respect to the proposed action.
Further, McIntyre as a member of the transportation department of the school district was an "educational support employee." See Fla. Stat. § 231.3605(1)(a) (1999). An educational support employee "shall have the opportunity to formally appeal" his termination under either the appropriate appeals process delineated by school board rule or under the collective bargaining agreement, if one exists. Fla. Stat. § 231.3605(2)(c) (1999).
*643 McIntyre delivered a letter on December 13, 1999 as directed in the School Board's notice. The letter identified McIntyre as the petitioner, indicated that he did not wish to be suspended without pay, stated he was gathering information to prove that the positive test result was erroneous, provided a copy of a second drug test showing a negative result, and asked the School Board to consider his employment record. The only item McIntyre failed to include was how he became aware of the School Board's action, a deficiency that we do not consider dispositive. Although McIntyre did not directly ask for a hearing, he did raise issues of disputed facts and his letter was sufficient to meet the minimum requirements listed in section 120.54(5)(b)4 for a hearing request.[1]
We also note that the School Board did not notify McIntyre that his letter was insufficient to constitute a request for a hearing nor did it dismiss McIntyre's letter without prejudice and allow him to amend it so as to conform with the School Board's rules of procedure or section 120.54(5)(b)4. See generally City of Winter Park, 765 So.2d at 798. Indeed, there is nothing in the record to show that the School Board did anything with McIntyre's letter other than place it in the agency file. On these facts, it cannot be definitively stated that McIntyre waived his right to a hearing.

II. McIntyre's Appeal to the School Board
On January 11, 2000, in a letter titled "appeal," McIntyre requested a hearing and requested payment for all of his accrued pay, but did not allege any disputed facts. As the School Board properly points out, McIntyre did not allege any basis to apply the doctrine of equitable tolling. See generally Machules v. Department of Admin., 523 So.2d 1132, 1134 (Fla.1988). However, McIntyre should not have been expected or required to do so because his January 11, 2000 request for a hearing should have related back to his first filed letter of December 13, 1999 if the School Board had followed section 120.569.
We also find that the School Board should have notified McIntyre of a deadline for filing an amended request for a hearing. See Fla. Stat. § 120.569(2)(c). Although McIntyre's course of action was not exemplary, the School Board should not have treated it as a waiver of his right to an administrative hearing precluding him from a formal hearing on the disputed factual issues and his termination.[2] Accordingly, we order the school Board to grant McIntyre's request for an administrative hearing.

III. Mandatory Commerical Driver's License (CDL)
The record on appeal reveals that the School Board erroneously concluded that McIntyre was required to have a CDL license and that he had violated federal regulations prohibiting persons who must hold a CDL from operating a commercial vehicle while under the influence of controlled substances. See generally 49 C.F.R. Parts 40 & 382 (1999). According to McIntyre's job description a CDL was "preferred," but not required. The description does not indicate that McIntyre operated a school bus or other commercial vehicle, but that he performed managerial and supervisory functions. The federal *644 law only applies to persons who operate a commercial vehicle and are required to hold a CDL. See 49 C.F.R. § 382.103.[3] Therefore, McIntyre did not violate the federal regulations applicable to a CDL contrary to the School Board assertions.

IV. Drug Use
Termination under Florida's Drug-Free Workplace Act is considered to be for "cause." An employee cannot be terminated based upon his first positive confirmed drug test unless first given an opportunity to participate in a drug rehabilitation program. See Fla. Stat. § 112.0455(8)(n)1, (10)(b). But, a special risk employee can be terminated based upon the first positive confirmed drug test. See Fla. Stat. § 112.0455(8)(n)3. Special risk employees are those who are required as a condition of employment to be certified under chapter 633 or chapter 943, Florida Statutes. See Fla. Stat. § 112.0455(5)(n).[4] Because McIntyre was not employed in a law enforcement capacity or as an installer of fire safety equipment, he was not a special risk employee and could not be terminated upon his first positive confirmed drug test.
Furthermore, assuming that McIntyre did test positive for marijuana, it is not clear whether he violated the School Board's policy against any employee "us[ing] ... marijuana ... before, during or after school hours at school or in any other school district location," because there is nothing in the record which indicates where McIntyre's alleged drug use took place. Additionally, the School Board's drug-free policy does not provide for termination, but states: "Any School Board employee who violates this policy shall be treated in accordance with appropriate Florida Statutes and/or appropriate Contract Agreement." The policy goes on to require that counseling and rehabilitative services would be provided to persons found to have abused drugs or alcohol. This language does not make it clear that McIntyre violated the School Board's drug-free policy.
McIntyre asserts that the School Board violated statutory drug testing procedures and did not allow him to have a second test performed by another testing location. Federal law and regulations preempt state statutes regarding drug testing of commercial vehicle operators "to the extent that: (1) Compliance with both the State or local requirement and this part is not possible; or (2) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this part." 49 C.F.R. § 382.109. Prior to testing employees, employers are required to give each employee a written notice stating what actions can be taken as a result of a positive drug test. See Fla. Stat. § 112.0455(6)(b) (1999).[5] Although *645 federal law allows random drug testing, Florida law provides for employee tests based on reasonable suspicion. See Fla. Stat. § 112.0455(7), (8)(u). Employers and testing facilities must comply with very detailed instructions for collecting urine samples, testing the samples, and verifying positive test results. See 49 C.F.R. §§ 40.25; 40.29; 40.3; Fla. Stat. § 112.0455(5)(d) & (12). All specimens identified as positive on the initial test shall be confirmed using gas chromatography/mass spectrometry or a more accurate scientific test. See 49 C.F.R. § 40.25; Fla. Stat. § 112.0455(9)(c). As part of the confirmation of results, employees have the opportunity to speak with the testing facility to determine whether there are any factors which might have resulted in a false positive result. See 49 C.F.R. § 40.29(a)(1), (b)(3), (g)(1)-(7); Fla. Stat. § 112.0455(8). Finally, at the employee's expense, the employer must allow the employee to have the original sample retested at another licensed facility. See Fla. Stat. § 112.0455(8)(h).
According to the allegations in McIntyre's brief, McIntyre was not afforded an opportunity for a second test. There are no indications that McIntyre reviewed his medical history with a medical reviewing officer. McIntyre also alleges in his brief and inferentially in his letter of December 13, 1999 that proper testing procedures were not followed. The School Board did not refute any of these allegations in its brief. And from the record on appeal, it is impossible to determine whether the School Board took these allegations into consideration when it made its decision to terminate McIntyre or when it refused his request for an administrative hearing. Agency decisions not based upon competent and substantial evidence, must be remanded back to the agency. See Fla. Stat. § 120.68(7)(b).

V. Date of Termination
The School Board admits that it considered McIntyre's letter requesting reconsideration of its denial of an administrative hearing after McIntyre filed his appeal and it was pending before this Court. It also candidly admits that the letter McIntyre received on December 6, 1999 indicates that his termination would be sought effective January 11, 2000. However, the School Board terminated his employment effective December 14, 1999 and this was error.

Conclusion
Drug use cannot be condoned in any location and it is especially harmful in a setting designed for education. However, there were material issues of fact that *646 were not resolved in this cause before McIntyre was discharged. He had a contractual property interest in retaining his job and the record on appeal clearly shows that the School Board based its decision to terminate McIntyre's employment on erroneous information. Because the School Board erroneously interpreted federal and Florida law and because it made numerous procedural errors, we remand for a meaningful hearing. The School Board shall afford McIntyre a formal administrative hearing pursuant to Chapter 120, Florida Statutes to determine whether he is subject to discharge. We vacate the School Board's termination and remand for an administrative hearing.
ORDER VACATED; REMANDED.
W. SHARP and PALMER, JJ., concur.
NOTES
[1] Because a copy of the School Board's procedural, grievance, determination, or disciplinary policies are not in the record on appeal, we assume that McIntyre had to meet the minimum requirements under section 120.54(5)(b)4 in his request for a hearing.
[2] If we assume arguendo that McIntyre waived his right to a hearing, this Court can exercise its prerogative to order an administrative hearing because the School Board based its decision to deny a hearing on disputed facts. See General Dev. Corp. v. Division of State Planning, Dept. of Admin., 353 So.2d 1199, 1209 (Fla. 1st DCA 1977) (citing Fla. Stat. § 120.68(6); Mitchell v. School Bd. of Leon County, 347 So.2d 805, 807 (Fla. 1st DCA 1977); United Faculty of Fla. v. Branson, 350 So.2d 489, 494 (Fla. 1st DCA 1977)); see also Fla. Stat. § 120.68(7)(a).
[3] 49 C.F.R. § 382 et seq. repeatedly references operators and drivers of commercial vehicles and gives employers the right to randomly test its drivers. See 49 C.F.R. § 382.305. Further, mandatory termination of the employee is not required and the regulation contemplates that a driver will return to work under controlled conditions. See 49 C.F.R. § 382.605.
[4] Chapter 633 applies only to those persons wishing to inspect, install, or maintain fire safety equipment. Chapter 943 applies to law enforcement personnel.
[5] Section 112.0455(6)(b), Florida Statutes provides that:

Prior to testing, all employees and job applicants for employment shall be given a written policy statement from the employer which contains:
1. A general statement of the employer's policy on employee drug use, which shall identify:
a. The types of testing an employee or job applicant may be required to submit to, including reasonable suspicion or other basis; and
b. The actions the employer may take against an employee or job applicant on the basis of a positive confirmed drug test result.
2. A statement advising the employee or job applicant of the existence of this section.
3. A general statement concerning confidentiality.
4. Procedures for employees and job applicants to confidentially report the use of prescription or nonprescription medications both before and after being tested. Additionally, employees and job applicants shall receive notice of the most common medications by brand name or common name, as applicable, as well as by chemical name, which may alter or affect a drug test. A list of such medications shall be developed by the Agency for Health Care Administration.
5. The consequences of refusing to submit to a drug test.
6. Names, addresses, and telephone numbers of employee assistance programs and local alcohol and drug rehabilitation programs.
7. A statement that an employee or job applicant who receives a positive confirmed drug test result may contest or explain the result to the employer within 5 working days after written notification of the positive test result. If an employee or job applicant's explanation or challenge is unsatisfactory to the employer, the person may contest the drug test result as provided by subsections (14) and (15).
8. A statement informing the employee or job applicant of his or her responsibility to notify the laboratory of any administrative or civil actions brought pursuant to this section.
9. A list of all drugs for which the employer will test, described by brand names or common names, as applicable, as well as by chemical names.
10. A statement regarding any applicable collective bargaining agreement or contract and the right to appeal to the Public Employees Relations Commission.
11. A statement notifying employees and job applicants of their right to consult the testing laboratory for technical information regarding prescription and nonprescription medication (emphasis added).